BURTON-SHIELDS COMPANY *v.* STEELE

[No. 17,815.  Filed February 1, 1949.  Rehearing denied
April 18, 1949.]

218

Upon Petition for Rehearing. *Petition Denied.*

*William E. Hart, Charles J. Barnhill;* and *Slaymaker, Merrill, Locke & Reynolds,* all of Indianapolis, for appellant.

*Isadore Feibleman, Julian Bamberger* and *Charles B. Feibleman,* all of Indianapolis, for appellee.

BOWEN, J.—This is an appeal from an award of the full Industrial Board of Indiana for compensation benefits in favor of appellee, the widow of one Paul E. Steele, for the death of the said Paul E. Steele on December 2, 1947 from pneumonia allegedly resulting from injuries sustained by the decedent on July 11, 1947. The Board by its finding and award concluded that decedent's injury consisted of a fall on a concrete floor and concussion to decedent's head which rendered him unconscious; that he was taken to a hospital and received medical treatment for a period of three days, at the end of which he returned to work; that as a result of said injury and concussion said decedent suffered certain degenerative character changes, and that he became sullen, indifferent to his work, and careless of his personal appearance, and began the excessive use of alcohol; that he continued to work for defendant from July 15 to November 28 at which time he was taken home ill from his work; that as a result of the character changes he became violent and unmanageable, and exposed himself thereby contracting pneumonia from which he died on December 2nd; that said immediate cause of death was proximately due

to his said injury of July 11, 1947, and degenerative character changes resulting therefrom.

The errors assigned for reversal are that the award is contrary to law and that it is not sustained by sufficient evidence.

The first proposition asserted by appellant is that the award is contrary to law because the Board failed to find that the appellee was a dependent in whole or in part of the decedent. The evidence in the record that appellee and the decedent were living together as husband and wife at the time of his death by virtue of the statute which provides for a conclusive presumption of dependency of a wife upon a husband with whom she is living at the time of his death, and the reference to appellee in the finding by the Board as decedent's widow, was sufficient in this regard to sustain the award. Burns' 1940 Replacement (1947 Supp.), § 40-1403a; *Willan* v. *Spring Hill Coal Corp.* (1948), 118 Ind. App. 422, 78 N. E. 2d 880.

The appellant also contends that the award is contrary to law because the Board failed to make any finding or order with reference to the payment of funeral bills, hospital or medical bills. No explanation is to be found for this omission, but as only the appellee would be harmed by this failure so to find, and in view of the fact the appellee has not seen fit to assign cross errors, such question is not material here. We cannot agree that such omission indicated an endeavor on the part of the Board to compromise a claim for death benefits contrary to the express language of the Workmen's Compensation Act. Such a conclusion could only be reached by resorting to speculation and conjecture.

The appellant asserts the award of the Industrial Board is not sustained by sufficient evidence, and that

appellee failed to sustain the burden of proving that the decedent sustained an accidental injury arising out of and in the course of his employment, and that his death more than five months after the alleged accident from pneumonia was the result of said accident. This proposition has two phases for our consideration. The first, whether decedent's original injury on July, 11, 1947 resulted from an accident arising out of and in the course of his employment; and the second, whether the immediate cause of decedent's death from pneumonia was proximately due to his said injury of July 11, 1947.

As to the first consideration, there was no direct evidence of decedent's fall from which the injury resulted. There was evidence in the record from which the Board could have properly determined, that prior to the time decedent suffered the fall, he had been in good health and had worked regularly. He was employed as a pressman by the appellant and he was the foreman of the composing room. After lunch on July 11, 1947 he returned to his work at the press and type cabinet. A fellow workman who was standing about eight feet from the decedent at the time of his fall testified that he heard a noise, and turned around, and that decedent was lying on the concrete floor; that it sounded like a noise someone would make when they were about to fall. The President of appellant company was in an adjoining room at the time of the accident, and he testified that, "I first learned of Paul's accident when I heard a thud which sounded to me as if someone would throw a watermelon off onto the street. I rushed out into the shop. I saw Paul lying on his back on the floor and there was a tremendous pool of blood on the floor." He further testified that the decedent was

unconscious; that he was lying near the cuspidor, which was located near the press and type cabinets. He also testified that on July 11, 1947, there was oil on the floor and that there was tobacco juice or spit on the floor around the cuspidor. This evidence, together with reasonable inferences to be drawn therefrom, supports the finding that the decedent sustained an accidental injury which arose out of and in the course of his employment with appellant. The cause of the fall may be disregarded if the fall resulted in injuries which would not have occurred except for the employment. *Youngstown Sheet & Tube Co.* v. *Tucak, et al.* (1946), 116 Ind. App. 612, 66 N. E. 2d 619; *Burroughs Adding Machine Co.* v. *Dehn* (1942), 110 Ind. App. 483, 39 N. E. 2d 499.

We must next consider the second phase of the second proposition asserted by appellant that the appellee failed to sustain the burden of proving that the immediate cause of decedent's death from pneumonia five months after the accident was the result of and proximately due to his said injury of July 11, 1947.

The evidence shows that the decedent suffered a severe head injury and concussion which rendered him unconscious from a fall on a concrete floor. This fall was described by witnesses as resounding, and he was observed lying in a pool of blood immediately thereafter. The physician who testified for appellant stated that he suffered a deep lacerated wound of the left parietal occipital region of the scalp. He was taken to the hospital in an ambulance after the accident occurred, and about 6:15 p.m. in the evening on the day of the fall, he became irrational, confused, and violent and had to be restrained to his bed by three nurses and two male attendants. He was later removed to a safer room. He was released from the hospital at

the end of three days and returned to his work. He worked for the appellant from July 15 to November 28.

The President of the appellant company testified that after the accident he noticed changes in decedent's conduct; that he became careless in his dress and the quality of his work. The decedent's widow testified regarding certain degenerative character changes; that prior to the accident he was quiet, considerate, and light-hearted, and that after the accident he became abusive, irritable, and used filthy language about the home; that prior to the accident he took an interest in household duties and that after the accident he ceased to perform his usual and customary duties about the house, and his regular work became drudgery and that he continually quarreled about having to go to work. His widow also testified that prior to the accident he was attentive and generous to her, and that after the accident he became less affectionate and sexual relations practically ceased. He also became careless of his appearance after the accident and began to drink to excess. He was brought home ill from his place of work on November 28 and did not return thereafter. On the following Monday he became demented and wanted to take off his clothes. He went in his pajamas to the garage which was entered from the kitchen door and he was out there talking about getting out forms and orders that were being prepared at the shop. He was completely incoherent and his wife couldn't get him into the house. Two fellow workmen and a physician came on call, and the physician gave him a hypodermic. The following morning, December 2nd, the physician returned and gave him a serum. The decedent died shortly thereafter on the same day.

Our courts have established a rule that the term "injury" as used in the Workmen's Compensation Acts

is broader than the mere reference to some objective physical break or wound to the body, but includes also the consequences therefrom, such as mental ailments or nervous conditions. *Kingan & Co., Ltd.* v. *Ossam* (1920), 75 Ind. App. 548, 121 N. E. 289; *Jackson Hill Coal & Coke Co.* v. *Slover* (1936), 102 Ind. App. 145, 199 N. E. 417.

In Workmen's Compensation cases, it has also been held if an injury concurs with the ailment in hastening a disease to a fatal termination, the right to an award exists where such fatality would not have occurred but for such injury. *Indian Creek Coal etc., Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N. E. 519; *Chicago, Wilmington & Franklin Coal Co.* v. *Industrial Commission et al.* (1948), 400 Ill. 60, 78 N. E. 2d 104.

In the instant case we have the testimony of two medical experts. A physician who specialized in neurology and psychiatry testified for plaintiff and stated his opinion of the cause of decedent's death, based upon hypothetical questions which embodied the evidence showing an injury to the left parietal occipital region of the scalp followed by the degenerative character changes which the other witnesses had observed in decedent. He stated his opinion that from the facts given as to such personality changes one could feel that decedent's head injury was a contributory cause of his death. The testimony of the other medical expert called by appellant was that in his opinion the death of decedent was not in any way associated with the head injury. Where, as in the instant case, the finding of the Board depends upon the adoption of one of two sharply conflicting views of medical experts, this court cannot undertake to determine which of the two is more worthy of belief.

The Industrial Board has the power to determine

the ultimate facts. In order to arrive at a contrary conclusion, we cannot weigh the evidence, neither can we ignore any reasonable inferences which the Industrial Board may have drawn from the facts established by the evidence.

There was sufficient evidence from which the Board could have properly found that the immediate cause of decedent's death was due to his said injury of July 11, 1947, and degenerative character changes resulting therefrom. The Board's finding in that regard was sustained by sufficient evidence and was not contrary to law.

The appellant points out that the finding of the Board, that after the accident to the decedent, the appellant rendered the necessary statutory medical attention and supplies, is wholly unsupported by any evidence. An examination of the record discloses this to be true. The appellant asserts this as reversible error, in that, if the Industrial Board believed it to be true, this fact might well have been an important factor in the ultimate determination of the case in favor of appellee. Whether the Board erroneously believed that the statutory medical attention and supplies had or had not been furnished by the employer could not properly have been considered as any basis for the determination of liability. The payment of such expenses does not constitute an admission of liability under the law. *Hayes* v. *Joseph E. Seagram & Co.* (1944), 222 Ind. 130, 52 N. E. 2d 356.

Such asserted error, therefore, was harmless to the appellant.

Appellant in Point 3 of Proposition II contends that there is no evidence in the record to support the award in favor of appellee, viz., the finding as to the average weekly earnings of the decedent. A careful examination of the record discloses that there is no evidence

sufficient to support the finding that the decedent earned an average weekly wage in excess of $36.50. In fact there is no evidence as to the amount of wages which were earned by decedent while in appellant's employ.

It has been well settled by a long line of decisions what facts must be the subject of express findings by the Industrial Board as a legal basis for an award in workmen's compensation cases. These are as follows: (1) That claimant was an employee; (2) that he received an injury by accident; (3) that the accident arose out of and in the course of his employment; (4) the character and extent of such injury, and (5) claimant's average weekly wage. *McCoskey* v. *Armstrong* (1933), 98 Ind. App. 23, 187 N. E. 901; *Cunningham* v. *Colen* (1939), 106 Ind. App. 387, 20 N. E. 2d 200; *Crawford* v. *Gary Heat, Light & Water Co.* (1929), 90 Ind. App. 276, 168 N. E. 716; *Pearson Co., Inc.* v. *McDermid* (1941), 109 Ind. App. 228, 31 N. E. 2d 642; *Muncie Foundry & Mach. Co.* v. *Thompson* (1919), 70 Ind. App. 157, 123 N. E. 196; *Sauer* v. *Tower Mfg. Co.* (1932), 94 Ind. App. 81, 179 N. E. 801; *Matlon* v. *Matlon* (1931), 92 Ind. App. 350, 175 N. E. 369; *Swing* v. *Kokomo Steel & Wire Co.* (1919), 75 Ind. App. 124, 125 N. E. 471.

An award of compensation cannot be determined until there has been a determination of the employee's average weekly wage at the time of the injury. In this case the Board has made such a finding, but there is no evidence in the record to support it. The award for such reason alone, is not sustained by sufficient evidence. The award of the full Industrial Board is, therefore, reversed and remanded for further proceedings consistent with this opinion.

NOTE.—Reported in 83 N. E. 2d 623.

## ON PETITION FOR REHEARING

BOWEN, J.—The appellant in its brief on petition for rehearing urges that this court should have reversed the award with instructions to enter an award in favor of appellant, and the suggestion is also contained in appellee's brief of a possibility of a need for the clarification of the mandate of this court in the original opinion as to any further proceedings before the Industrial Board.

The mandate of this court as set forth in the original opinion was the only proper mandate which this court has the power and authority to make under the conclusions reached on the issues.

Our Supreme Court in the case of *Heflin* v. *Red Front Cash & Carry Stores* (1947), 225 Ind. 517, 75 N. E. 2d 662, stated on page 665:

". . . The right of the Appellate Court to review an award of the Industrial Board is given by § 40-1512, Burns' 1940 Replacement. Under this statute the review is for errors of law. This statute merely gives the Appellate Court authority to determine whether, upon the facts and law, the action of the board is based upon an error of law or is wholly unsupported by the evidence or clearly arbitrary or capricious. This particular statute does not empower the Appellate Court to order the board to enter an award. By this statute the legislature did not undertake to vest in the court the administrative function of determining whether or not an award should be granted," citing *Ma-King Products Company* v. *David H. Blair* (1925), 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046; 1 Vom Baur, *Federal Administrative Law*, § 44; *Russell* v. *Ely & Walker Dry Goods Co.* (1933), 332 Mo. 645, 60 S. W. 2d 44, 87 A. L. R. 953; *King* v. *Alabam's Freight Co.* (1932), 40 Ariz. 363, 12 P. 2d 294; *Paramount Pictures, etc.* v. *Industrial Commission* (1940), 56 Ariz. 217, (Opinion on Rehearing 56 Ariz.

352) 106 P. 2d 1024; *McGarry* v. *Industrial Commission* (1925), 64 Utah 592, 232 Pac. 1090, 39 A. L. R. 306; *Cole* v. *Sheehan Construction Co.* (1944), 222 Ind. 274, 53 N. E. 2d 172; *Cole* v. *Sheehan Construction Co.* (1944), 115 Ind. App. 303, 57 N. E. 2d 625; 42 Am. Jur., Public Administrative Law, § 247.

In the Heflin case, *supra,* the Appellate Court had reversed an award of the Industrial Board with instructions to said Board to enter an award in favor of the appellant. The Supreme Court upon transfer of this case held that this mandate was improper in the following language:

"It is our opinion that upon the reversal of this award the cause should be remanded to the Industrial Board of Indiana and upon its being so remanded the board should have the right to proceed with the same in a manner not inconsistent with the views herein expressed. If the present mandate were allowed to stand it would preclude the board *from hearing further evidence* if it so desired or from taking any steps other than to enter a final award. This would be an invasion of the normal rights and duties which said board has prior to the making of any award. It is idle to assume that the board would disregard the directions of the reviewing court. 'For purposes of judicial finality there is no more reason for assuming that a Commission will disregard the direction of a reviewing court than that a lower court will do so.' *Federal Power Comm.* v. *Pacific Power & L. Co.* (1938), 307 U. S. 156, 59 S. Ct. 766, 768, 83 L. Ed. 1180, 1183." (Our emphasis).

Under the foregoing decision of the Supreme Court it would appear that the board has the power and authority to hear further evidence as to the average weekly wage of appellee's decedent or to take such other steps not inconsistent with

our original opinion which it deems proper under the circumstances.

Petition for rehearing denied.

NOTE.—Petition for Rehearing reported in 85 N. E. 2d 263.